UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| JOE HAND PROMOTIONS, INC., | ) | 1:09-cv-02197 AWI GSA |
| | ) | |
| Plaintiff, | ) | **FINDINGS AND RECOMMENDATIONS ON PLAINTIFF'S APPLICATION FOR DEFAULT JUDGMENT BY THE COURT** |
| v. | ) | |
| | ) | (Document 17) |
| ADNAN MOHAMMED SADDELDIN, et al., | ) | |
| | ) | |
| Defendants. | ) | |

On April 10, 2010, Plaintiff Joe Hand Promotions, Inc. ("Plaintiff") filed the present Application for Default Judgment by the Court against Defendants Adnan Mohammed Saddeldin, Jay P. Ghazal and Allen Martin Ormonde, individually and d/b/a Samba Brazilian Steak House, and Brazilian BBQ, Inc. (Doc. 17.)  A hearing was held on May 14, 2010, before the Honorable Gary S. Austin.  Thomas P. Riley, Jr. appeared telephonically on behalf of Plaintiff.  No appearance was made by or on behalf of Defendants.

**BACKGROUND**

Plaintiff filed the instant action on December 18, 2009.  (Doc. 1.)  Defendants were served with the summons and complaint on January 25, 2010.  (Docs. 8-11.)  The complaint alleges violations of 47 U.S.C. Section 605 and 47 U.S.C. Section 553.  Plaintiff also alleges a

state law claim of conversion and a violation of California Business and Professions Code section 17200, *et seq*.

Defendants have not answered the complaint or otherwise appeared in this action. On March 1, 2010, the Clerk of the Court entered default against Defendants Jay P. Ghazal, Mohammed Saddeldin, Allen Martin Ormonde and Brazilian BBQ, Inc. (Doc. 13.)

Plaintiff filed the instant application for default judgment on April 10, 2010. Plaintiff requests that the Court enter default judgment against Defendants in the amount of $110,750.00.

Despite being served with the application by United States Mail, Defendants have not responded to the application.

**Legal Standard**

Federal Rule of Civil Procedure 55(b)(2) provides that judgment may be entered:

> By the Court. In all other cases, the party must apply to the court for a default judgment. A default judgment may be entered against a minor or competent person only if represented by a general guardian, conservator, or other like fiduciary who has appeared. If the party against whom a default judgment is sought has appeared personally or by a representative, that party or its representative must be served with written notice of the application at least 3 days before the hearing. The court may conduct hearings or make referrals--preserving any federal statutory right to a jury trial--when, to enter or effectuate judgment, it needs to:
> (A) conduct an accounting;
> (B) determine the amount of damages;
> (C) establish the truth of any allegation by evidence; or
> (D) investigate any other matter.

"Upon default, the well-pleaded allegations of the complaint relating to liability are taken as true." *Dundee Cement Co. v. Highway Pipe and Concrete Products*, 722 F.2d 1319, 1323 (7th Cir. 1983); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917-918 (9th Cir. 1987).

Factors which may be considered by courts in exercising discretion as to the entry of a default judgment include: (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of a dispute concerning material facts; (6) whether the default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel v. McCool*, 782 F.2d 1470, 1471-1472 (9th Cir. 1986).

## DISCUSSION

Service of summons and complaint in this action was made on Defendants Jay P. Ghazal, Allen Martin Ormonde, Adnan Mohammed Saddeldin and Brazilian BBQ, Inc. on January 25, 2010. True and correct copies of the Proofs of Service were filed with this Court on February 4, 2010. (Docs. 8-11). Defendants failed to respond to the complaint or otherwise appear in this action. The Clerk of the Court entered default against these Defendants on March 1, 2010. (Doc. 13.) Defendants are not infants or incompetent persons, and are not in the military service or otherwise exempted under the Soldiers' and Sailors' Civil Relief Act of 1940. (*See* Doc. 17, Part 2, at ¶ 3.)

Plaintiff seeks judgment pursuant to Title 47 of the United States Code sections 553 and 605 against Defendants for unlawfully intercepting, receiving and exhibiting the *Ultimate Fighting Championship 92: "The Ultimate 2008"* on December 27, 2008, at their establishment in Fresno, California. Plaintiff requests enhanced statutory damages in the amount of $110,000.00 and $750.00 for state law conversion.

**1.** *Violation of 47 U.S.C. Section 533*

Unauthorized reception of cable service is governed by Title 47 of the United States Code section 533, which provides, in relevant part:

> (a) Unauthorized interception or receipt or assistance in intercepting or receiving service; "assist in intercepting or receiving" defined
> **(1)** No person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law.
> **(2)** For the purpose of this section, the term "assist in intercepting or receiving" shall include the manufacture or distribution of equipment intended by the manufacturer or distributor (as the case may be) for unauthorized reception of any communications service offered over a cable system in violation of subparagraph (1).

Pursuant to section 533, the aggrieved party may recover statutory damages of "not less than $250 or more than $10,000 as the court considers just" for all violations. 47 U.S.C. § 553(c)(3)(A)(ii). However, in any case in which the court finds that the violation was committed willfully and for purposes of commercial advantage or private, the court may increase the award of damages by an amount of not more than $50,000. 47 U.S.C. § 553(c)(3)(B).

**2.**     *Violation of 47 U.S.C. Section 605*

The relevant provisions of Title 47 of the United States Code section 605, which address unauthorized publication or use of wire or radio communications, state:

> (a) . . . no person receiving, assisting in receiving, transmitting, or assisting in transmitting, any interstate or foreign communication by wire or radio shall divulge or publish the existence, contents, substance, purport, effect, or meaning thereof, except through authorized channels of transmission or reception, (1) to any person other than the addressee, his agent, or attorney. . .. No person not being authorized by the sender shall intercept any radio communication and divulge or publish the existence, contents, substance, purport, effect, or meaning of such intercepted communication to any person. No person not being entitled thereto shall receive or assist in receiving any interstate or foreign communication by radio and use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto. No person having received any intercepted radio communication or having become acquainted with the contents, substance, purport, effect, or meaning of such communication (or any part thereof) knowing that such communication was intercepted, shall divulge or publish the existence, contents, substance, purport, effect, or meaning of such communication (or any part thereof) or use such communication (or any information therein contained) for his own benefit or for the benefit of another not entitled thereto.

Additionally, the aggrieved party is authorized to obtain statutory damages of "not less than $1,000 or more than $10,000, as the court considers just" for each violation. 47 U.S.C. § 605(e)(3)(C)(i)(II). The court may award enhanced damages up to $100,000 for each violation if it finds the violation was willfully committed for commercial advantage or private financial gain. 47 U.S.C. § 605 (e)(3)(C)(ii).

**3.**     *Analysis of the Federal Violations Alleged*

Plaintiff attests that it is a closed-circuit distributor of sports and entertainment programming that purchased and retained the commercial exhibition licensing rights to the program at issue. Plaintiff marketed the sub-licensing (commercial exhibition) rights in the program to its commercial customers. (Doc. 18, ¶ 3.) Plaintiff contends that persistent signal piracy of its programming costs the company, its customers and the community millions of dollars annually. (Doc. 18, ¶ 11.) Plaintiff believes this results in part from the perceived lack of significant consequences (including nominal or minimal damage awards by the Courts who hear its cases) for such unlawful interception and exhibition by the commercial signal pirates. (Doc.

18, ¶ 12.) As such, Plaintiff requests the maximum allowance for statutory violations, totaling $100,000. (Doc. 18, ¶ 13; *see also* Doc. 17, Part 2, at ¶ 7.)

Here, the summons and complaint were served upon Defendants Jay P. Ghazal, Allen Martin Ormonde, and Adnan Mohammed Saddeldin by substitute service on January 25, 2010. The service was effected pursuant to Federal Rules of Civil Procedure rule 4(e)(2), which provides as follows:

> Unless federal law provides otherwise, an individual . . . may be served in a judicial district of the United States by:
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> (2) doing any of the following:
>    (A) delivering a copy of the summons and complaint to the individual personally;
>    (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>    (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

For each of the aforementioned Defendants, the summons and complaint were served upon "Tim;" he refused to provide his last name but indicated he was the person in charge. "Tim" is described as Caucasian, thirty-five years of age, five feet nine inches tall, weighing approximately 180 pounds, with black hair. (See Docs. 8-9 & 11.) Additionally, Brazilian BBQ, Inc. was also served on January 25, 2010, via substitute service on "Tim," and it was noted the service was made pursuant to subdivision (h)(1) of Rule 4 of the Federal Rules of Civil Procedure, which provides as follows:

> Unless federal law provides otherwise or the defendant's waiver has been filed, a domestic or foreign corporation, or a partnership or other unincorporated association that is subject to suit under a common name, must be served:
>    (1) in a judicial district of the United States:
>       (A) in the manner prescribed by Rule 4(e)(1) for servicing an individual; or
>       (B) be delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and - if the agent is one authorized by statute and the statute so requires - by also mailing a copy of each to the defendant . . ..

Thus, it appears that Defendants' defaults were properly entered, and the complaint is sufficiently well-pled. By their default, Defendants have admitted to willfully violating the referenced statutes for purposes of commercial advantage. Although deterrence of future violations are

important objectives of the statutes, the facts before the Court indicate that Defendants' establishment is a "small eating establishment," with a maximum capacity in the bar area of approximately forty (40) people. Armando Torrez, Plaintiff's investigator, rated the establishment at 6737 N. Palm Avenue in Fresno, California, as "good" and noted it contained a single large flat screen television at the end of the bar. Torrez conducted two head counts while he was present between the hours of 9:00 and 9:45 p.m. on December 27, 2008; the first count totaled six (6) and the second count totaled eight (8). At the time Torrez departed Defendants' establishment, a total of approximately eight (8) persons were present. There is no indication that a cover charge was required. Given the relatively small impact of Defendants' actions, the Court finds that the amount of requested damages should be reduced.

Plaintiff's counsel urged this Court to consider the fact that Defendants' establishment itself is much larger than the bar area, thus it is possible that patrons in the restaurant portion of the business could also view the Program exhibited in the bar area. However, Torrez's declaration does not speak to such a possibility or reality, and therefore, the Court will not consider it.

**4.**     ***Conversion***

Plaintiff seeks $750.00 in conversion damages, the value of the properly at the time of the conversion. (Doc. 17 at 15.)

Under California law, "[c]onversion is the wrongful exercise of dominion over the property of another. The elements of a conversion are (1) the plaintiff's ownership or right to possession of the property at the time of the conversion; (2) the defendant's conversion by a wrongful act or disposition of property rights; and (3) damages." *Greka Integrated, Inc. v. Lowrey*, 133 Cal.App.4th 1572, 1581, 35 Cal.Rptr.3d 684 (2005) (internal quotation marks omitted); *see also G.S. Rasmussen & Assocs., Inc. v. Kalitta Flying Serv., Inc.*, 958 F.2d 896, 906 (9th Cir.1992). "Because conversion is a strict liability tort, questions of the defendant's good faith, lack of knowledge, motive, or intent are not relevant." *Gilman v. Dalby*, 176 Cal.App.4th 606, 615 n.1, 98 Cal.Rptr.3d 231 (2009). Exclusive right to distribute a broadcast signal to commercial establishments constitutes a "right to possession of property" for purposes of

conversion. *See Don King Prods./Kingvision v. Lovato*, 911 F.Supp. 419, 423 (N.D.Cal.1995); *see also DIRECTV, Inc. v. Pahnke*, 405 F.Supp.2d 1182, 1189 (E.D.Cal.2005) (concluding that the "right to distribute programming via satellite" constituted a "right to possession of personal property" for purposes of a conversion claim under California law).

Here, Plaintiff was granted the exclusive domestic commercial exhibition licensing rights to the program at issue, and thus had the right to possession of the property at the time of the conversion. (Doc. 18, ¶ 3.) Next, because Defendants did not legally purchase the pay-per-view programming, the exhibition of the fight in Samba Brazilian BBQ on December 27, 2008, constituted Defendants' conversion by a wrongful act or disposition of property rights. (Doc. 18, ¶¶ 6-7.) Finally, the rate card for the Ultimate Fighting Championship, for an establishment with "a maximum fire code occupancy" of fifty (50) persons, similar in size to Defendants' establishment, indicates the sub-license fee for the program would have been $750. (Doc. 18, ¶ 8 & Ex. 1.) Thus, Plaintiff is entitled to damages for conversion in the amount of $750.

**RECOMMENDATION**

Based on consideration of the declarations, pleadings and exhibits to the present application, the Court RECOMMENDS as follows:

1. Plaintiff's application for default judgment be GRANTED;
2. Judgment be entered in this action against Defendants; and
3. Damages in the total amount of $30,750 be awarded as follows:
   a. For violation of 47 U.S.C. § 553, the sum of $10,000;
   b. For violation of 47 U.S.C. § 605, the sum of $10,000;
   c. For the violations of 47 U.S.C. § 553(c)(3)(B) and 47 U.S.C. § 605(e)(3)(C)(ii), the total sum of $10,000; and
   d. For the conversion of Plaintiff's property, the sum of $750.

These findings and recommendations are submitted to the district judge assigned to this action, pursuant to Title 28 of the United States Code section 636(b)(1)(B) and this Court's Local Rule 304. Within fifteen (15) days of service of this recommendation, any party may file written objections to these findings and recommendations with the Court and serve a copy on all parties.

Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The district judge will review the magistrate judge's findings and recommendations pursuant to Title 28 of the United States Code section 636(b)(1)(C).  The parties are advised that failure to file objections within the specified time may waive the right to appeal the district judge's order.  *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

Dated: **May 14, 2010**              /s/ **Gary S. Austin**
                                     UNITED STATES MAGISTRATE JUDGE